IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ANTOIN S. REZKO, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | Case No. 08 C 5433 |
| ) | |
| SEMIR D. SIRAZI, MARDINI, INC., and ) | |
| GREENSTONE CAPITAL, LLC, ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Semir Sirazi, Mardini, Inc., and Greenstone Capital LLC filed an involuntary bankruptcy petition under 11 U.S.C. § 303, naming Antoin Rezko as the debtor. Rezko moved the bankruptcy court to dismiss the petition. The court denied Rezko's motion and entered an order for relief. Rezko contends that the bankruptcy court erred in denying the motion and in treating his motion as an answer to the involuntary petition. For the reasons stated below, the Court affirms the bankruptcy court's ruling in part and remands the case to the bankruptcy court for further proceedings.

## Background

On May 7, 2008, Sirazi, Mardini, and Greenstone Capital filed the involuntary petition that is the subject of this appeal. The petitioning creditors' claims stem from two agreements they had with Rezko.

1

Sirazi won a state court judgment against Rezko and two entities he owned, based on an agreement known as the Guarantee Agreement. The Guarantee Agreement provided that Sirazi would give a personal guarantee of $1 million dollars for a loan from Broadway Bank to Rezko. For this guarantee, Rezko agreed to pay Sirazi various fees, including $150,000 if the loan was not repaid by January 1, 2003, and $250,000 each quarter thereafter so long as Sirazi's guarantee remained in place. Rezko, along with Abdelhamid Chaib, also agreed to grant Sirazi an ownership interest in Rezko Enterprises if the loan was not repaid on schedule.

After Rezko failed to repay the loan, the fees and interest began accumulating. The bank eventually liquidated Sirazi's $1 million certificate of deposit but returned about $150,000 in accrued interest. Sirazi filed suit in the Circuit Court of Cook County in October 2006. In his answer to the state court complaint, Rezko asserted his Fifth Amendment rights and failed to substantively address the allegations. Rezko also asserted the following affirmative defenses: (1) breach by Sirazi, (2) unenforceable penalty, (3) laches, (4) substantive and procedural unconscionability, and (5) failure to mitigate damages.

The state court granted Sirazi's motion for summary judgment and awarded Sirazi slightly under $5.8 million in damages. Rezko appealed but did not post an appeal bond or obtain a stay of the judgment. The case is pending in the Illinois Appellate Court.

In May 2006, Sirazi and two of the other petitioning creditors, Mardini and Greenstone Capital, entered into another agreement with Rezko and Rezmar

Corporation, referred to as the Settlement Agreement. The Settlement Agreement purported to resolve and merge claims arising from previous agreements between the creditors and Rezmar. Sirazi agreed to provide a written guarantee and collateral for loan by Republic Bank to Rezmar. In exchange, Rezmar agreed to pay the three creditors a total of $7.7 million. Rezko agreed to grant the creditors a security interest in distributions allegedly due to him from Heritage Development Partners, LLC, which owned sixty-two acres of land in Chicago. During the litigation, Rezko stated that Heritage Development Partners was wholly owned by another entity. Under the Settlement Agreement, the payment would constitute "full resolution, settlement, and satisfaction" of the prior agreements between the parties. Resp. Ex. 16. Rezko signed the Settlement Agreement in three places: once as chairman of Rezmar; once as "shareholder" of Rezmar; and once more as "Antoin Rezko, individually." *Id.* The third signature was part of a section of the agreement that purports to bind Rezko as a guarantor on the agreement.

In July 2006, Sirazi, Mardini, and Greenstone Capital filed suit against Rezko and Rezmar in the Circuit Court of Cook County, following their failure to make payments under the Settlement Agreement. Although the trial court denied Rezko's motion to dismiss, it struck several counts of the complaint based on the underlying agreements and allowed the creditors to file an amended complaint alleging those counts in the alternative. Rezko asserted his Fifth Amendment rights in his answer and raised several affirmative defenses. Rezko claimed that (1) he was not individually bound by the settlement agreement; (2) the agreement lacked consideration; (3) the creditors breached by suing under the previous agreements; and (4) the creditors were

3

barred from bringing claims under those agreements. The case is pending before the state trial court.

On May 7, 2008, the petitioning creditors filed the involuntary bankruptcy petition against Rezko based on these two sets of claims. Rezko moved the bankruptcy court to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6), contending that there were multiple bona fide disputes concerning both debts and that the petitioning creditors were ineligible under section 303 for several reasons.[1] The bankruptcy court denied Rezko's motion to dismiss in an oral ruling on August 26, 2008. The court found that there were no bona fide disputes as to Rezko's liability on either of the claims and that Rezko had forfeited any arguments based on alleged disputes concerning the amount of the debts because he had failed to press those arguments during briefing. The court stated that it had not used the traditional Rule 12(b)(6) standard, which would have been more favorable to the creditors as the nonmoving parties, in analyzing Rezko's motion to dismiss and that the standard it did use was more akin to a summary judgment standard.

The bankruptcy court then considered whether an answer from Rezko was necessary. When the court asked what issues Rezko would raise in an answer beyond those which the court had already ruled upon, Rezko's counsel responded that he did not know because he had not yet spoken to his client about it. Over counsel's objection, the court ruled that it would not allow Rezko to file an answer and that it would treat Rezko's motion to dismiss as an answer. This exchange took place at the

---

[1] Rezko has apparently abandoned several of those grounds on appeal, including the issue of whether the petitioning creditors are actually three separate entities.

same hearing at which the court made its oral ruling denying the motion to dismiss. The bankruptcy court then entered an order for relief, making its decision appealable.

In his appeal, Rezko contends that the bankruptcy court erred in several ways. He contends that the court erroneously determined the likelihood of success of his claims in his appeal of the Guarantee Agreement judgment and in the pending litigation concerning the Settlement Agreement. He also contends that the court erred when it declined to allow him to file an answer to the petition and take discovery.

## Discussion

**A.     Existence of bona fide disputes**

**1.     Standard of review**

The petitioning creditors contend that the Court should review the bankruptcy court's ruling for clear error. *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002) ("We agree with other circuits that have held that this is essentially a factual inquiry and adopt a clearly erroneous standard of review."). Rezko contends that the ruling is subject to *de novo* review because the bankruptcy court misapplied the bona fide dispute standard. *See Key Mech. Inc. v. BDC 56 LLC*, 330 F.3d 111, 119 (2nd Cir. 2003) ("To the extent a bankruptcy court's decision that a claim is subject to a bona fide dispute involves findings of fact, we review for clear error. To the extent it involves conclusions of law, we review it *de novo*."). This Court agrees with the Second Circuit's approach, which ties the standard of review to the nature of the

decision—factual or legal—made by the lower court.² Thus, the Court will review the bankruptcy court's factual findings for clear error and will review *de novo* its legal conclusions and its application of the law to the facts.

**B.      Bankruptcy court's application of *Busick***

Section 303 provides that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition . . . by three or more entities, each of whom is [ ] a holder of a claim against such person that is not . . . the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). The statute does not define the term "bona fide dispute," but the Seventh Circuit has adopted a standard for what constitutes such a dispute.

The question of whether a bona fide dispute exists requires courts to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *In re Busick*, 831 F.2d 745, 749-50 (7th Cir. 1987). The presence of pending litigation or the filing of an answer in a lawsuit does not *per se* establish the existence of a bona fide dispute. *Vortex*, 277 F.3d at 1066. Section 303 "does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary." *Busick*, 831 F.2d at 750.

Rezko contends that the bankruptcy court erroneously determined that there were no bona fide disputes after improperly considering whether he would prevail in the

---

² The Seventh Circuit has not set a standard of review for the determination of whether a bona fide dispute exists.

underlying cases.³ He contends that he need only show that "the Petitioning Creditors' claims are called into question," and he advances several of his affirmative defenses as bases for bona fide disputes. Rezko Br. at 13. Contrary to Rezko's implication, the *Busick* standard does not require that the bankruptcy court dismiss an involuntary petition simply because the debtor has raised affirmative defenses. Rather, *Busick* requires the court to engage in some analysis of the alleged dispute to determine whether it has an objective factual or legal basis. *Busick*, 831 F.2d at 750. Thus, the mere fact that the bankruptcy court looked into the facts and legal theories underlying Rezko's defenses does not render its analysis erroneous. *See In re Rimell*, 946 F.2d 1363, 1365-66 (8th Cir. 1991) (applying *Busick* and finding that the bankruptcy court did not err when it examined loan documents and evaluated evidence offered by both sides before determining that no bona fide dispute existed).

## C. Guarantee Agreement

Rezko contends that the bankruptcy court erred in finding that there was no bona fide dispute concerning his liability under the Guarantee Agreement because the pendency of an appeal of the state court judgment reflects the existence of a bona fide dispute. He contends that the court should have adopted the approach of *In re Byrd*, which says that an unstayed state court judgment may constitute a bona fide dispute in certain circumstances. *In re Byrd*, 357 F.3d 433, 438 (4th Cir. 2004).

---

³Rezko contends that the bankruptcy court conceded that it had resolved the state court claims on the merits during the August 26 hearing. App. at 13 (citing Aug. 26, 2008 Tr. at 64). That passage, however, refers to the bankruptcy court's resolution of the issues raised by the motion to dismiss, not the claims pending in state court.

The bankruptcy court did not adopt a *per se* rule, as Rezko suggests. Rather, it concluded that even under *Byrd*, there was no bona fide dispute concerning liability under the Guarantee Agreement. Aug. 26, 2008 Tr. at 22.

Rezko contends that the bankruptcy court "failed to consider sufficiently the reasoning of [*Byrd* and other cases]." Rezko Br. at 32. That is not so. The bankruptcy court correctly stated that although the court in *Byrd* allowed for the possibility that an unstayed state court judgment pending appeal might give rise to a bona fide dispute, such cases are "unusual." Aug. 26, 2008 Tr. at 21 (quoting *Byrd*, 357 F.3d at 438). Furthermore, *Byrd* requires the debtor to produce evidence of the existence of a bona fide dispute. *Byrd*, 357 F.3d at 440. In fact, the court in *Byrd* concluded that the debtor in that case could not establish a bona fide dispute merely by reiterating the same argument the state court had rejected without producing any evidence to contradict the creditors' evidence of indebtedness. *Id.* A debtor "cannot defeat [the creditor's] standing to file under section 303 simply by refusing to concede the validity of [the creditor's] claim, without presenting evidence to support his factual and legal arguments." *Id.*

Rezko failed to produce evidence, aside from the brief he submitted to the state court, to support his legal arguments concerning his liability on the Guarantee Agreement. Of the five defenses he pressed in the bankruptcy court,[4] only his claim

---

[4] Rezko now contends that the facts and circumstances surrounding the litigation call into question the validity of the judgment. Specifically, he contends in this appeal that he was unable to participate in his defense in the Guarantee Agreement litigation. In that same paragraph, however, Rezko cites his response Sirazi's motion for summary judgment in that case. Rezko Br. at 32. It is clear that Rezko contested that motion vigorously, though he ultimately lost.

that Sirazi breached the agreement has any potential to absolve him of liability. Even on *de novo* review, the Court agrees with the bankruptcy court that Rezko's argument does not create a bona fide dispute. It is undisputed that Sirazi posted a $1 million certificate of deposit and that he lost at least $850,000 as a result of Rezko's failure to pay back the loan. Nothing in the Guarantee Agreement prohibited Sirazi from posting a certificate of deposit as a guarantee. Furthermore, Rezko has not produced evidence that he protested or disputed Sirazi's method of securing the guarantee until Sirazi filed the lawsuit to enforce the Guarantee Agreement. Thus, the bankruptcy court did not err when it found that no bona fide dispute exists concerning Rezko's liability under the Guarantee Agreement.

Rezko contends that the bankruptcy court erroneously concluded that he forfeited the argument that there is a bona fide dispute concerning the amount of any of his debts. Certain arguments that Rezko advanced in his briefs before the bankruptcy court implicate the amount of the alleged debt, not simply liability. Specifically, in his motion to dismiss the involuntary petition, Rezko argued that Sirazi's actual damages were no more than $850,000 and that the state court's award of a greater amount violated Illinois public policy; certain provisions of the Guarantee Agreement amounted to an unenforceable penalty; and Sirazi's damages should have been limited due to his alleged failure to mitigate. Mot. to Dismiss at 11-12. Rezko clearly delineated these points in his motion. This reflects that he disputed at least a portion of the amount claimed by Sirazi. The bankruptcy court thus clearly erred in concluding that Rezko had forfeited the argument that the amount of his debt under the Guarantee Agreement was the subject of a bona fide dispute.

9

It does not appear from the bankruptcy court's ruling that the court considered these arguments when it determined that no bona fide dispute existed. With respect to the Guarantee Agreement, the bankruptcy court concluded that because "Rezko ha[d] not offered any evidence to dispute his *liability*," he had "not established that the claim [was] subject to a bona fide dispute." Aug. 26, 2008 Tr. at 22 (emphasis added). The court did not address the issue of whether the amount of the debt was the subject of a bona fide dispute. On remand, the bankruptcy court must address whether there is a bona fide dispute concerning the amount of the debt owed by Rezko under the Guarantee Agreement.

In sum, the bankruptcy court erred in failing to address the merits of Rezko's arguments on the issue of the amount of his alleged debt under the Guarantee Agreement.

**D.     Settlement Agreement**

Rezko also argues that a bona fide dispute exists with respect to liability and amount regarding the claim based on the Settlement Agreement. He contends that the bankruptcy court misapplied case law and impermissibly evaluated the merits of his defenses to the creditors' claims. He also contends that the bankruptcy court erroneously concluded that he forfeited any argument contesting the amount of the debt as opposed to simply his liability.

As an initial matter, the bankruptcy court did not err when it found that Rezko had forfeited an argument as to the amount due under the Settlement Agreement. A party's "failure to develop [an] argument in any meaningful way" may lead a court to conclude

that the party has forfeited it. *Bell v. DaimlerChrysler Corp.* 547 F.3d 796, 807 (7th Cir. 2008). Although Rezko insists that he argued that the penalty provisions were unenforceable—which could constitute an argument contesting the amount due—his argument on that subject in his motion to dismiss was far too curt to preserve the point. Before the bankruptcy court, Rezko merely stated, without elaboration, that "any claims under that agreement are barred on grounds of unconscionability, and are against public policy because of the excessive and onerous fee, interest, and penalty provisions thereunder." Mot. to Dismiss at 9. That conclusory statement, devoid of any explanation, does not indicate a bona fide dispute.[5] *See Byrd*, 357 F.3d at 440. In his reply brief filed in the bankruptcy court, Rezko asserted that there was a bona fide dispute as to the amount of the debt but again offered no specific argument. Due to his failure to meaningfully develop this argument, the bankruptcy court did not err in concluding that Rezko had forfeited it.

Turning to Rezko's other arguments, the bankruptcy court committed no error in applying *Busick* to the situation at hand. The state court litigation involving the Settlement Agreement is still pending, but the existence of a pending lawsuit does not by itself show the existence of a bona fide dispute. *Vortex*, 277 F.3d at 1066. Rezko asserted that he is "ardently" contesting the state court lawsuit. Mot. to Dismiss at 17. But "[t]here is . . . a fundamental difference between a dispute based solely on the contentious nature of a litigant and a bona fide dispute." *In re Smith*, 243 B.R. 169, 182

---

[5]Rezko's contentions in this regard contrast significantly with similar points he raised regarding the Guarantee Agreement litigation, in which he provided an explanation, albeit a succinct one, of his contentions regarding the amount of the debt.

(Bankr. N.D. Ga. 1999) (internal quotation marks and citations omitted). Neither Rezko's subjective belief nor the ardor of his protestations impact the bona fide dispute analysis, which requires an objective inquiry. And although Rezko repeatedly asserts that the bankruptcy court impermissibly evaluated the merits of the case, the bona fide dispute inquiry—whether there is an objective basis for a dispute in law or fact—necessarily requires some analysis of the issues before the state court.

Rezko contends that the fact that he has filed an answer and raised affirmative defenses in the state court is sufficient to show that a bona fide dispute exists. Although he acknowledges that pending litigation or the filing of an answer does not by itself establish such a dispute, he contends that his particular affirmative defenses to the creditors' claims do so. Rezko cites two cases that he contends stand for the proposition that the assertion of affirmative defenses and the pendency of state court litigation demonstrate the existence of a bona fide dispute: *In re Vortex* and *In re TLC Medical Group*.

In *Vortex*, the creditor had sued the debtor in state court for unpaid invoices on an open account. *Vortex*, 277 F.3d at 1066. The debtor asserted affirmative defenses on that claim and filed a counterclaim based on another transaction between the parties. *Id.* The bankruptcy court found that a bona fide dispute existed because there were several unresolved issues of fact concerning whether the creditor had breached an agreement and a legal dispute concerning whether the creditor's claim was related to the debtor's counterclaim. *Id.* at 1066-67. The debtor also supported the his contention that a bona fide dispute existed with evidence, including a letter from the creditor indicating that the two claims were related. *Id.* at 1067. Thus, contrary to

12

Rezko's suggestion, the court's finding did not depend solely on the fact that the debtor had raised affirmative defenses in the state court.

In *In re TLC Medical Group*, the petitioning creditor was a former shareholder of the debtor. *In re TLC Medical Group, Inc.*, No. 04-15739, 2005 WL 4677807 at *1 (Bankr. E.D. La. Mar. 4, 2005). The creditor claimed that she made various loans to the debtor, which remained unpaid. *Id.* at *2. The debtor testified, however, that the creditor had misappropriated funds while she was a shareholder. *Id.* The creditor also admitted that she had diverted some funds. *Id.* From this, the court concluded that there was a bona fide dispute as to that particular claim. *Id.* at *3. Although the court stated that there was a pending lawsuit concerning the creditor's claims, the court relied on the evidence presented in the bankruptcy proceeding to support its holding. Thus contrary to Rezko's suggestion, the fact that the claim was the subject of a state court lawsuit was not decisive.

Unlike the debtors in these cases, Rezko failed produce evidence to support his arguments before the bankruptcy court. Rather, he simply reasserted his affirmative defenses and insisted that bona fide disputes exist. That was insufficient.

First, Rezko contends that he did not sign the Settlement Agreement in his individual capacity but rather did so as chairman and shareholder of Rezmar. This argument is unpersuasive. The Settlement Agreement itself states that both Rezmar and Rezko are "borrowers" and that the borrowers are both liable under the agreement. Furthermore, Rezko signed the Settlement Agreement three times—twice within the main part of the agreement and once in a supplemental part as a guarantor. In the

13

main part of the agreement, he signed as "Chairman of Rezmar," binding Rezmar, and as "Antoin S. Rezko, Shareholder." The bankruptcy court stated that Rezko did not present, and it could not find, any "authority that requires or permits a shareholder to sign for the corporation." Aug. 26, 2008 Tr. at 26. Rezko has again failed to present any legal support for this argument. Instead, he cites several cases for the proposition that an *officer* may escape personal liability and bind the corporation when he indicates his corporate affiliation next to his signature. He does not, however, offer any argument as to why this rule extends to the appellation of "shareholder." As the bankruptcy court stated, a "shareholder would sign for no reason other than to accept personal liability." *Id.* In addition, the Settlement Agreement provides for the transfer of distributions received by virtue of Rezko's ownership interests in Heritage Development Partners, LLC. According to the agreement, only Rezko, not Rezmar, held an ownership interest in that entity. The bankruptcy court stated that this provision further demonstrated that Rezko was personally bound by the agreement. Rezko has failed to address this reasoning in his appeal.

Next, Rezko contends that there is a bona fide dispute concerning the adequacy of consideration because the release offered by the creditors was illusory. The bankruptcy court found that the argument had no merit. This Court agrees. Even a cursory reading of the Settlement Agreement reveals that Rezko received consideration, including a forbearance on collection of debts due under the previous agreements and a staggered payment schedule. Rezko contends that this consideration "was no consideration at all." App. at 21. His subjective belief, however, is insufficient to create a bona fide dispute.

14

Rezko next contends that the creditors breached the Settlement Agreement by suing him under the previous agreements. The Settlement Agreement provided that the new agreement constituted full resolution, settlement, and satisfaction of the liability of Rezko and Rezmar under the previous agreements. Resp. Ex. 16 ¶ 2. The agreement also provided that the rights and remedies granted to the creditors are in addition to the remedies available under the agreements relating to the underlying debts. *Id.* ¶ 12(c). These two terms, when read together, amount to a conditional release of the creditors' claims under the previous agreements. Because the release was conditional, it was not a breach for the creditors to sue under the previous agreements once Rezko and Rezmar had breached the Settlement Agreement, a breach that Rezko does not deny. The bankruptcy court correctly found that no bona fide dispute existed.

Finally, Rezko contends that the creditors are barred from suing under the previous agreements by virtue of the Settlement Agreement. As explained above, that is not so. The Settlement Agreement states that any remedies granted to the creditors are in addition to those available under the previous agreements. Thus, there is no bona fide dispute concerning Rezko's liability under the Settlement Agreement.

**D.     Answer and discovery request**

Rezko argues that the bankruptcy court erred in not allowing him to submit an answer after denying his motion to dismiss and in refusing his request to conduct discovery.

The Court cannot say that the bankruptcy court acted inappropriately. Rezko's motion, though styled as a motion to dismiss for failure to state a claim, went to the merits of the involuntary petition. In addition, Rezko's counsel did not offer the bankruptcy court any additional arguments he might raise in an answer. Even on appeal, Rezko does not state what he would assert in his answer or identify what he could obtain in discovery that might shed more light on the purported disputes, aside from the arguments he raised in his motion to dismiss.

It is likewise apparent that the bankruptcy court did not apply the traditional Rule 12(b)(6) standard, which would have been much more favorable to the creditors, when resolving the motion to dismiss. Rezko protests that the bankruptcy court impermissibly relied on evidence presented by the creditors and turned the motion to dismiss into a motion for summary judgment without allowing him the benefit of discovery. This argument, however, misconstrues the bankruptcy court's ruling. In the portions of the ruling that Rezko contests on appeal, the bankruptcy court relied only on the two agreements, which Rezko himself presented to the court as exhibits to his motion to dismiss. Though the bankruptcy court relied on other evidence, presented by the creditors, when it ruled on the separate-entity issue, Rezko has not pressed the separate-entity issue on appeal and has thus forfeited it. Any insistence on discovery predicated on forfeited arguments is misplaced.

**Conclusion**

For the foregoing reasons, the Clerk is directed to enter judgment as follows: The decision of the bankruptcy court is affirmed in part, but the case is remanded to the bankruptcy court for consideration of whether there is a bona fide dispute regarding the amount due under the Guarantee Agreement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 29, 2009